# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ANIL HOMILY,                          :

            Petitioner      :      CIVIL ACTION NO. 4:05-1500

      v.                          :            (JONES, D.J.)
                                      (MANNION, M.J.)

MARTY HUNTSBURGER[1] &              :
PENNSYLVANIA STATE
ATTORNEY GENERAL,                  :

           Respondents     :

## REPORT AND RECOMMENDATION

Before this court is the relator's petition for writ of habeas corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254. For the following reasons, the court recommends that the petition be denied.

## I.    Procedural Background

On May 11, 2000, following a trial to a jury in the Court of Common

---

[1]It appears that "Marty Huntsburger" is an incorrect spelling for the relator's custodian, Mardiann I. Hunsberger, now Mardiann I. Vincent. A search of the Pennsylvania Department of Corrections' website, http://www.cor.state.pa.us (last visited July 14, 2006), shows no record of a "Marty Huntsburger." However, a press release from January 16, 2006, announced the appointment of Mardiann I. Hunsberger as superintendent of the State Correctional Institution at Laurel Highlands ("SCI-Laurel Highlands"), Somerset, Pennsylvania, where the relator is imprisoned. See "Hunsberger Appointed SCI Laurel Highlands Superintendent," available at http://www.cor.state.pa.us/press/cwp/view.asp?a=462&q=134914&pressNav=| (last visited July 14, 2006). The relator refers to the respondent as "Mardi Hunsburger" in certain filings. See, e.g., Doc. No. 35. The contact information for SCI-Laurel Highlands, at http://www.cor.state.pa.us/laurel/cwp/view.asp?a=430&q=129580&laurelNav=| (last visited July 14, 2006), lists the superintendent as Mardiann I. Vincent.

Pleas of Susquehanna County, Pennsylvania, the relator was convicted on one count of murder in the third degree for the death of his girlfriend. (Doc. No. 31 ex. 3.)  On June 22, 2000, the trial court sentenced the relator to a term of imprisonment of ten to twenty years, a $5,000 fine, the costs of prosecution, and restitution to the victim's family for burial expenses. (Id. exs. 1 & 2.)

The relator, by and through counsel, appealed the conviction to the Pennsylvania Superior Court. He raised five issues.[2]  First, he contended that the trial court erred by admitting into evidence hearsay statements by the decedent concerning the relator's abusive behavior.  Second, he contended that the medical evidence–the testimony of the medical examiner who had performed the decedent's autopsy and two other medical experts–was not sufficient as a matter of law to support the charge of homicide.  According to the relator, none of the medical experts could state to a reasonable degree of medical certainty that the cause of the decedent's death was homicide.[3]

_____

[2]For completeness, the court lists all the grounds raised by the relator in his appeals and collateral challenge.  However, the court elaborates only on those grounds that are pertinent to the instant habeas petition because they are related to the claims raised therein and are necessary for the discussion below.  Similarly, the court elaborates on the Pennsylvania courts' reasons for denying the relator's appeals and collateral challenges only as they are pertinent to the petition.

[3]The following facts proffered by the relator formed the basis of his claim:  The decedent's body was found in 1991.  The medical examiner, aware that the decedent's corpse had been found in suspicious circumstances, determined that the decedent had died of internal hemorrhaging, but could not determine the source of the hemorrhage or the

2

Third, the relator contended that the delay between the decedent's death and the relator's indictment prejudiced the relator's right to a fair trial.  Fourth, he contended that the trial court erred in sentencing the relator by deviating from the sentencing guidelines.  Finally, he contended that the trial court erred in instructing the jury that it could consider the relator's flight.  (Id. ex. 5.)

The Superior Court affirmed the relator's conviction on November 20, 2001.  In denying the relator's second claim, the Superior Court found that the medical examiner "expressed with a reasonable degree of medical certainty that [the decedent's] death was a homicide," which was, consequently, sufficient for the jury to find beyond a reasonable doubt that the death was homicide.  (Id. ex. 9.)

The relator, by and through counsel, then petitioned the Pennsylvania Supreme Court for allowance of appeal.  He raised four issues.  First, he

---

cause of death.  The decedent remained unidentified until 1994.  Even with the decedent's medical records, which indicated that she had been a victim of physical abuse, the medical examiner still could not determine a cause of death, but ascertained that the prior physical abuse was unrelated to the death.  In 1994, the relator became a suspect in the decedent's death.  The Pennsylvania State Police asked the medical examiner to reclassify the cause of death as a homicide, which he did in 1999 without conducting any further medical examination.  At trial, the Commonwealth called two pathologists who testified, without examining the corpse, that the cause of death was homicide. According to the relator, the autopsy revealed no basis upon which a medical expert could find the cause of death to be homicide because the source of hemorrhaging was indeterminate and could be non-homicidally caused.  The relator's medical expert stated that the cause of death could not be determined and could have been caused by a ruptured cyst instead of physical violence.  Furthermore, the medical examiner had at one point testified that the cause of the hemorrhaging could have been the forceful insertion of a dildo into the vagina or rectum.  (Doc. No. 31 ex. 5.)

3

contended that the trial court abused its discretion by allowing the Commonwealth to use the decedent's hearsay statements as substantive evidence of the relator's guilt instead of to show her state of mind.  Second, he contended that the trial court abused its discretion by allowing "voluminous and cumulative" testimony of the decedent's hearsay statements that prejudiced the relator.  Third, reiterating the arguments presented to the Superior Court, he contended that the medical evidence was not sufficient to support the charge of homicide.  Finally, he contended that the delay between the decedent's death and the relator's indictment prejudiced the relator's right to a fair trial.  (Id. ex. 10.)  The Supreme Court denied allocator on May 20, 2002.  (Id. ex. 12.)

On July 16, 2002, the relator, proceeding pro se,[4] petitioned for relief under the Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 et seq., in the Court of Common Pleas, alleging ineffective assistance of counsel and violations of the U.S. and Pennsylvania Constitutions.  First, the relator contended that the trial court abused its discretion by not allowing the relator's counsel to cross-examine a Commonwealth witness concerning the witness's prior convictions. Second, the relator contended that counsel were ineffective for "failing to preserve and raise on direct appeal the constructive denial of petitioner's right to confrontation" with respect to the Commonwealth witness's

---

[4]The court originally appointed counsel to represent the relator in his post-conviction petition, but granted counsel's motion to withdraw because of the petition's lack of merit.  (Doc. No. 31 exs. 15 & 19.)

4

cross-examination.  (Id. ex. 13.)  Third, the relator contended that counsel were ineffective for failing to call the relator's parents as witnesses.  Finally, the relator contended that counsel were ineffective for failing to show that the medical evidence was insufficient to support the charge of homicide and was false.  The relator reiterated the arguments raised in his direct appeal and further posited that the cause of death could have been an ectopic pregnancy, which had been raised–and dismissed by the medical examiner–at trial.  According to the relator, his counsel were ineffective because they did not show that the medical examiner's opinions were unsubstantiated and perjurious because there was no pathology report and no laboratory tests on blood or tissue to confirm his findings and exclude an ectopic pregnancy.  Had the medical examiner or the other medical experts provided a pathology report or laboratory tests, the relator avers, the evidence would then have shown that an ectopic pregnancy was a more likely cause of death than homicide.[5]  Counsel also allegedly put on the stand an unqualified expert whose testimony was detrimental to the relator's case.  (Id. exs. 13, 17, & 18.)

The Court of Common Pleas denied the petition without a hearing on April 17, 2003.  In rejecting the relator's final claim, the court made two findings.  First, the court found that the relator was not entitled to PCRA

---

[5]The relator argues that the medical examiner and the other medical experts failed to follow up on physical indications of an ectopic pregnancy, including by not producing a pathology report or conducting laboratory tests. (Doc. No. 31 exs. 13, 17, & 18.)

review on his claim concerning the medical examiner's testimony because it had been previously litigated on direct appeal.  Second, the court found that the relator's medical expert had not prejudiced his case by misdiagnosing the cause of death and was a qualified medical expert against whom the jury had no reason to be biased.  (Id. ex. 19.)

On May 16, 2003, the relator appealed pro se the lower court's denial of his post-conviction petition to the Superior Court.  (Id. ex. 20.)  The relator raised three claims.[6]  First, the relator contended that the Court of Common Pleas abused its discretion in finding that the issue of counsel's ineffectiveness for failing to argue that the medical testimony was insufficient had been previously litigated.  Second, the relator contended that the Court of Common Pleas erred "BY FAILING TO ADDRESS THE CLAIMS OF TRIAL COUNSEL'S INEFFECTIVENESS IN AN EVIDENTIARY HEARING DUE TO [the relator's] USE OF NUMEROUS EXTRA RECORD FACTS."  (Id. ex. 23.)  The second claim consisted of two allegations.  The relator first argued that counsel failed to obtain from the Commonwealth a pathology report that would have shown that the decedent had died of an ectopic pregnancy and the medical examiner has perjured himself.  The Commonwealth violated his rights under Brady v. Maryland, 373 U.S. 83 (1963), by not disclosing the exculpatory pathology report.  Next, the relator argued that counsel were

---

[6]The respondents were unable to find a copy of the relator's appellate brief, and the relator's appellate issues is taken from the Superior Court's opinion denying the appeal.  (Doc. No. 31 ex. 23 & Doc. No. 28.)

ineffective for hiring an incompetent expert. As part of this argument, the relator claimed that had his expert been competent, he would have testified that the medical examiner should have conducted laboratory tests to determine whether there was an ectopic pregnancy. In his third claim, the relator contended that the Court of Common Pleas erred in not holding an evidentiary hearing on the Commonwealth's use of false testimony. (Id.)

The Superior Court affirmed the denial on October 21, 2004. In rejecting the relator's first claim, the court found it unreviewable because it had been previously litigated in the relator's direct appeal. (Id.) The court noted that the claim remained finally litigated and unreviewable even though the relator raised it as a claim of ineffective counsel. "[C]laims that are finally litigated cannot be reexamined under the guise of ineffectiveness of counsel." (Id.) In rejecting the relator's second claim, the court first found that the relator had waived it by not raising it in his PCRA petition. The court then went on to discuss the claim's lack of merit. The relator had failed to show a Brady violation because it was "mere supposition" that a pathology report existed. (Id.) There being no evidence to suppress, the Commonwealth could not have suppressed it. The court, adopting the reasoning of the lower court, next found that the relator's medical expert was qualified. It refused to address the issue of whether the medical examiner should have performed laboratory tests because it had not been raised in the lower court. (Id.)

The relator did not petition for allowance of appeal to the Pennsylvania

7

Supreme Court.  (Doc. No. 29.)  "No further relief was sought in the State

Court where, it appears that no relief is available."  (Doc. No. 2.)

On July 28, 2005, the relator, proceeding pro se, filed the instant petition

for writ of habeas corpus.  He raises three claims.  First, the relator contends

that the Commonwealth unconstitutionally failed to disclose exculpatory

evidence in the form of the decedent's medical records that showed she died

of natural causes.  "Instead, the prosecution hid the records and prosecuted

this petitioner for murder."  (Doc. No. 1.)  The relator argues that, after trial,

he received an anonymous package containing the decedent's medical

records, which the Commonwealth had never disclosed to the defense and

which showed the decedent had suffered from an ectopic pregnancy and

other uterine health problems that could have caused her death.  According

to the relator, the Commonwealth based its case on "supposition and/or flat

out conjecture" and deliberately withheld exculpatory medical evidence.  (Doc.

No. 2.)  Additionally, the Commonwealth left in the possession of the West

Virginia State Police, who had found the corpse, various tissue and blood

samples and other evidence that would prove the decedent died of an ectopic

pregnancy.  (Id.)

Second, the relator contends that the relator's trial and appellate

counsel were ineffective because they did not "investigate[] the circumstances

surrounding the victims death [sic]" or "attempt to secure" the victim's medical

records, which would have shown that the Commonwealth's medical evidence

8

was false. (Doc. No. 1.)  Finally, the relator contends that the Commonwealth knowingly presented false testimony by the medical examiner, who had been coerced to change the decedent's cause of death to homicide even though he had no basis for that conclusion.  Each of these claims relies on the relator's assertion that the Commonwealth suppressed the decedent's medical records and medical evidence.  (Doc. No. 1.)

The respondents filed a response, brief, and exhibits on February 15, 2006.  (Doc. Nos. 28, 29, & 31.)  The respondents contend that the relator has not exhausted his remedies.  In respect of the first claim, the respondents note that the Superior Court, in denying the relator's PCRA appeal, found that the relator had not properly presented his Brady claim to the Court of Common Pleas.  The Superior Court, in the same decision, rejected on the merits the relator's second and third claims.  (Doc. No. 29.)

The respondents go on to argue that, even though the Superior Court treated the second and third claims on the merits, the relator is really raising a new claim that the Pennsylvania courts have not addressed.  According to the respondents, the relator interweaves throughout the petition and supplemental filings the argument that he has new medical evidence showing that the cause of death was an ectopic pregnancy and that testing would prove this.  "Petitioner has never formally presented his claim of ineffective assistance of counsel based upon the failure to test the retained autopsy samples."  (Id.)

The respondents argue that the relator would be allowed under the PCRA to file a second, untimely, petition based on new, exculpatory evidence that could not have been discovered before because of the Commonwealth's Brady violation. According to the respondents, this court must dismiss the relator's petition because he has not properly exhausted remedies.

The respondents also argue, in a footnote, that the Commonwealth did not suppress the medical evidence in West Virginia. They argue that the relator and his counsel had a copy of the West Virginia State Police's report, which listed the tissue and blood samples and other evidence the state police retained and which the relator contends would prove his innocence. They further argue that the defense in fact offered into evidence as their own exhibit the police report and cross-examined the state trooper who had prepared the report with it. (Id.)

The relator submitted a reply to the response and exhibits on February 28, 2006, an "Addendum/Exhibit" to the reply on March 3, 2006, a "Compilation of Medical History Withheld by the Commonwealth" on March 15, 2006, and "Petitioner's Suggestion of Court and M.D. Consultation to Realize the Efficacy of the Habeas Petition, the Validity of the Requests to Analyze Certain Items Left in Bridgeport, WV, as per Proper Protocol, and to Interpret the Medical Records Hidden by the Commonwealth" on March 24, 2006. (Doc. Nos. 32, 33, 34, & 35.) These submissions are a collection of documents by the relator and exhibits that discuss the issues the relator has

10

raised at all stages of his case in state and federal courts. They include copies of the decedent's medical records that the Commonwealth allegedly suppressed.

In addition, the relator filed "Duce Tecum/Petitioner's Motion to Allow the Issuance of Subpoenas" and "Petitioner's Motion to Subpoena and Compel the Preservation of Evidence." (Doc. Nos. 24 & 26.) In light of the recommended disposition of the habeas petition, the court recommends that these motions be dismissed as moot.

## II.   Discussion

### A.   Exhaustion of Remedies

A district court is authorized to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (2006). A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of his confinement and seeking "immediate release or a speedier release from that imprisonment." Preiser v. Rodriguez, 411 U.S. 475, 498-500 (1973).

The district court may grant a petition only if the relator has exhausted all available state remedies as to each federal claim raised in the petition. 28 U.S.C. § 2254(b)(1)(A); Coleman v. Thompson, 501 U.S. 722, 731-32 (1991);

Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  The principle of exhaustion, which is founded on federal-state comity,[7] requires a relator "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . by invoking one complete round of the State's established appellate review process."[8] O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see Slutzker, 393 F.3d at 380 (citing Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)).  The "complete round" must include petitioning for any available discretionary appeal to the state's highest court.[9]  O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see Slutzker, 393 F.3d at 380 (citing Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)).

However, "state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the

---

[7]Exhaustion also ensures that the federal court has a complete record with which to evaluate the habeas petition.  Rose v. Lundy, 455 U.S. 509, 519 (1982); Walker v. Vaugh, 53 F.3d 609, 614 (3d Cir. 1995).

[8]To provide the state courts with a full and fair opportunity, the petitioner must "fairly present" his federal claims, which means that "a relator must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

[9]In a discretionary appeal process, the state's highest court need not adjudicate the claim; rather, the petitioner must merely present the claim to it.  O'Sullivan, 526 U.S. at 845-47; Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984); Wallace v. Pennsylvania Bd. of Probation & Parole, No. Civ. 04-1297, slip. op. at *2 (M.D. Pa. Nov. 7, 2005).

past." O'Sullivan, 526 U.S. at 844 (citing Wilwording v. Swenson, 404 U.S. 249, 249-50 (1971) (per curiam)).  Rather, the relator must only avail himself of a state's "normal, simple, and established" review process.  Id. at 845 (describing discretionary review to the Illinois Supreme Court).    In Pennsylvania, allocator to the Supreme Court is not "available" because that court has "remove[d] review of criminal and collateral appeals from the 'normal' and 'established' appellate review procedure," and state prisoners need only undertake direct or collateral appeals to the Superior Court. Lambert v. Blackwell, 387 F.3d 210, 232-34 (3d Cir. 2004), cert. denied, 544 U.S. 1063 (2005) (citing In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000)).

The exhaustion requirement is excused if it would be futile because "there is an absence of available State corrective process," such as where an appeal or petition for review would be procedurally barred as untimely, or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(I), (ii); Slutzker, 393 F.3d at 380 (citing Doctor, 96 F.3d at 681).  However, if exhaustion is futile because the petitioner failed to satisfy a state procedural requirement, then the petitioner has procedurally defaulted and the exhaustion requirement is not necessarily excused.    Coleman, 501 U.S. at 729-30; Slutzker, 393 F.3d at 380-81. Procedural default, like exhaustion, is founded on comity and federalism.  A

13

federal court may not entertain a petition for habeas corpus where the petitioner has procedurally defaulted because the procedural default "rests on independent and adequate state procedural grounds." <u>Coleman</u>, 501 U.S. at 729-30, 750; <u>Slutzker</u>, 393 F.3d at 380-81.

Procedural default is excusable only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."   <u>Coleman</u>, 501 U.S. at 749-50; <u>Slutzker</u>, 393 F.3d at 380-81.  To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  Examples of "cause" include where interference by government officials made compliance impracticable or ineffective assistance of counsel. <u>Id.</u>  But a claim of ineffective assistance of counsel must generally be presented to the state courts as an independent claim before it may be used to establish "cause" for procedural default.  <u>Id.</u> at 488-89; <u>Werts v. Vaughn</u>, 228 F.3d 178, 192-93 (3d Cir. 2000); <u>see</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself.").

The miscarriage of justice exception is available only in "an

14

extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496.  To demonstrate his actual innocence, the relator must make a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986).  This showing requires the relator to "'show a fair probability that, in light of all the evidence, including that . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.'" <u>Id.</u> n.17 (quoting Henry Friendly, <u>Is Innocence Irrelevant?  Collateral Attack on Criminal Judgments</u>, 38 U. CHI. L. REV. 142, 160 (1970)); <u>see</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992).

In the instant case, the court must analyze independently each of the relator's claims.  The relator did not raise his first claim, alleging a <u>Brady</u> violation, in his direct appeal or PCRA petition.  Instead, he first raised the claim in his appeal to the Superior Court of the Court of Common Pleas' denial of his PCRA petition, which the Superior Court noted in refusing to entertain the claim.  Consequently, the relator failed to provide the state courts with "a full and fair opportunity" to consider the merits of the claim, and the claim is unexhausted.

Because the relator can no longer timely submit the issue to the state courts, <u>see</u> 42 PA. CONS. STAT. ANN. § 9545 (2006) (statute of limitations on filing PCRA petition), exhaustion of the claim is futile, and the relator has

15

procedurally defaulted on it.  The court finds no ground to excuse the relator's procedural default.  There is no cause for the relator's failure to timely raise the claim in his direct appeal or the PCRA petition.  Neither the government nor allegedly ineffective counsel prevented the relator from raising the issue at some point.  The relator has also not met the standard for the miscarriage of justice exception.  Although the relator avers that the victim's medical records would prove him "actually innocent," the evidence does not convince this court that the jury would have "entertained a reasonable doubt of his guilt."  The record indicates that there was substantial circumstantial evidence upon which the jury could reasonably find the relator guilty of the decedent's murder notwithstanding the allegedly suppressed evidence: multiple witnesses testified to the relator's abuse of the decedent and the decedent's fear that the relator would kill her; three medical experts testified that the cause of death was homicide; one witness implicated the relator in the murder; and, one witness implicated the relator as being the last person seen with her.  The relator's own expert, whom the state courts found was qualified and competent, testified that the cause of death could have been natural, not homicide.  The jury chose to credit the Commonwealth's witnesses over the relator's.

The medical records that the relator contends were suppressed would likely not have altered that conclusion.  The allegedly suppressed records do not conclusively show that the decedent died of an ectopic pregnancy, but

indicate that the decedent had medical problems.  Based upon them, the relator's medical expert would likely only be able to testify to what he in fact said on the stand, allegedly without the records.  They would serve to raise the same doubt that the relator's medical expert attempted to raise without success, and this court finds that the jury would no more have credited the allegedly suppressed medical records than it credited the expert.  Accordingly, the court finds that the relator's first claim is unexhausted and procedurally defaulted.  The court does not reach the ultimate issue of whether any records were in fact suppressed.  Accordingly, it recommends that the relator's petition for writ of habeas corpus should be dismissed with respect to this claim.

The court finds that the relator has properly exhausted his second and third claims.  The court rejects the respondents' contention that the relator is really raising a new claim.  Both claims are substantially similar to claims that were presented to the state courts in the relator's direct appeal (ground two) and PCRA petition (ground four).  In those instances, the relator challenged the sufficiency of the evidence to support a charge of homicide and argued that the autopsy and the decedent's medical history would have indicated a natural cause of death had they been properly reviewed.  The relator's second claim essentially argues that his counsel failed to show that the medical evidence indicated a non-homicidal cause of death, which would have led the jury to acquit him, and which means counsel were ineffective.  In his third

claim, although the relator presents it in the formal petition as a matter of the Commonwealth presenting perjured testimony, the basis of the claim as shown by his submissions is really that the medical evidence was insufficient to support a guilty verdict.  In respect of both claims, the relator exhausted his remedies because he appealed the Court of Common Pleas' denial of both claims to the Superior Court.  Accordingly, the court will proceed to address the merits of the second and third claims.[10]

## B.    Review of the Merits

### 1.    Habeas Corpus Standard of Review

In evaluating the merits of a state prisoner's habeas petition, the district court must generally defer to the decisions of the state courts.  A district court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A decision by a state court is "contrary to . . . clearly established federal law" "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question

---

[10]Even had the relator not exhausted his remedies, the court could deny the claims on the merits.  28 U.S.C. § 2254(b)(2).

18

of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>Harrington v. Gillis</u>, – F.3d –, 2006 WL 1889982, at \*4 (3d Cir. July 11, 2006); <u>see</u> <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 887-88 (3d Cir.) (<u>en banc</u>), <u>cert. denied</u>, 528 U.S. 824 (1999).   A decision by a state court unreasonably applies federal law if "the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413; <u>Harrington</u>, 2006 WL at \*4.

The application of § 2254(d)(1) entails two steps.  First, the court must determine whether "'Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.'"  <u>Matteo</u>, 171 F.3d at 888 (quoting <u>O'Brien v. Dubois</u>, 145 F.3d 16, 24-25 (1st Cir. 1998), <u>overruled in part on other grounds by</u> <u>McCambridge v. Hall</u>, 303 F.3d 24 (1st Cir. 2002)). Then, if the court determines that the state court's decision was not "contrary to" federal law, "either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established," the court must determine whether the state court's application of federal law was an "unreasonable application" of the Supreme Court rule. <u>Id.</u> at 889.  Unreasonableness is an objective determination; a state court decision is unreasonable if, "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing

19

Supreme Court precedent." Id. at 889-90; see Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

### 2. Ineffective Assistance of Counsel

The Constitution guarantees criminal defendants the effective assistance of counsel, U.S. CONST. amend. VI, which is measured by "reasonableness under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a violation of that right, a relator must make two showings. First, he "must show that counsel's performance was deficient." Id. Second, he must affirmatively show that the deficient performance "prejudiced the defense." Id. at 687, 693. Prejudice means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Pennsylvania's standard for ineffective assistance of counsel in adjudicating a PCRA petition is similar to the standard announced in Strickland. Pursuant to 42 PA. CONS. STAT. ANN. § 9543(a)(2)(ii), a defendant petitioning under the PCRA in state court must show that ineffective assistance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." To meet the required showing, a defendant must prove that (1) the issue giving rise to

20

the ineffectiveness claim has arguable merit; (2) counsel had no reasonable basis for the challenged conduct; and, (3) the challenged conduct prejudiced the defendant.   Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Commonwealth v. Pierce, 527 A.2d 973, 975-76 (Pa. 1987).    The Pennsylvania standard, which was applied by the state courts in the relator's PCRA petition and appeal, is not "contrary to" the standard announced in Strickland.   See Werts, 228 F.3d at 204 (Pennsylvania's standard not "contrary to" federal standard); Pierce, 527 A.2d at 976-77 (same).

The state courts did not unreasonably apply the ineffective assistance standard in evaluating the relator's claims.  The Court of Common Pleas and the Superior Court found that the relator's counsel undertook a reasonable defense, which is born out by this court's review of the record.   Contrary to the relator's assertion, his counsel mounted a reasonable defense that failed to raise a reasonable doubt in the jury.  Defense counsel hired an expert, whom the state courts found qualified and competent, who testified that the cause of death could have been natural and not homicide.  Defense counsel also challenged the Commonwealth's experts in their opinions that the cause of death was homicide.  It does not appear to this court that counsel "fail[ed] to discover" the decedent's medical history.  Indeed, counsel raised the issue of whether her health and the autopsy indicated a non-homicidal cause of death. Nor does it appear that counsel failed to "present a defense."   In fact, counsel's performance was reasonably effective and comported with

constitutional requirements.  Accordingly, the court recommends that the relator's petition for writ of habeas corpus be denied with prejudice with respect to the claim of ineffective assistance of counsel.

### 3.    Sufficiency of the Evidence

The Constitution guarantees a criminal defendant the right to be convicted only on evidence sufficient to establish to a finder of fact, beyond a reasonable doubt, every element of the crime.  U.S. CONST. amend. XIV; see Jackson v. Virginia, 443 U.S. 307, 324 (1979).  In determining whether the evidence is sufficient to sustain the conviction, a federal court must view all the evidence and draw all inferences in favor of the prosecution.  Jackson, 443 U.S. at 319.  The evidence may only be found insufficient "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 324.

Pennsylvania's standard for determining the sufficiency of the evidence in a direct appeal is similar to the federal standard.  The appellate court, viewing the evidence and drawing all inferences in favor of the Commonwealth, must determine whether the trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt. Commonwealth v. Hagen, 654 A.2d 541, 543 (Pa. 1995).  This standard,

22

which was applied by the Superior Court in the relator's direct appeal, is not contrary to the federal standard.

The Superior Court's application of the sufficiency of the evidence standard was not unreasonable.  The Superior Court found that the medical examiner had expressed his opinion that the decedent's death was homicide in accordance with the relevant standard of a reasonable degree of medical certainty.  It concluded that the medical examiner's expert opinion was sufficient for the jury to conclude that the death was a homicide.  This court's review of the record shows that the Superior Court's conclusion is objectively reasonable.  Accordingly, the court recommends that the relator's petition for writ of habeas corpus be denied with prejudice with respect to the claim of insufficient evidence.

## III.    Conclusion

On the basis of the foregoing, **IT IS RECOMMENDED THAT**:

(1).    the relator's petition for writ of habeas corpus (Doc. No. 1) be **DISMISSED** with respect to claim one for failure to exhaust remedies;

(2).    the relator's petition for writ of habeas corpus (Doc. No. 1) be **DENIED** with prejudice on the merits with respect to claims two and three; and,

23

(3).   the relator's motions, "Duce Tecum/Petitioner's Motion to Allow the Issuance of Subpoenas" and "Petitioner's Motion to Subpoena and Compel the Preservation of Evidence"  (Doc. Nos. 24 & 26), be **DISMISSED** as moot.


S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

Date: July 28, 2006

O:\shared\REPORTS\2005 Reports\05-1500.01.wpd