IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANIL HOMILY, | : | No. 4:cv-05-1500 |
| | : | |
| Petitioner | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Mannion) |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, et. al, | : | |
| Respondents | : | |

## MEMORANDUM

### April 3, 2007

**THE BACKGROUND OF THIS MEMORANDUM  IS AS FOLLOWS:**

On July 28, 2005, Petitioner Anil Homily ("Petitioner" or "Homily") an

inmate at the State Correctional Institution at Laurel Highlands ("SCI-Lauren

Highlands") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254

("Petition").  (Rec. Doc. 1).

On July 28, 2006, Magistrate Judge Mannion issued a Report and

Recommendation (doc. 36)  recommending that the Petition be denied.  Objections

have been filed to the Magistrate Judge's report (docs. 47, 48, 51 and 52) and

therefore the matter is ripe for our review.

## PROCEDURAL HISTORY:

The procedural history in the above-captioned matter is lengthy and detailed.

1

Our summary tracks Magistrate Judge Mannion's inclusive and detailed recitation of the procedural history underlying the matter.  Neither the Petitioner nor the Respondents objected to this portion of Magistrate Judge Mannion's report, therefore we find it entirely appropriate to borrow heavily from that portion of the Magistrate Judge's report.  (Rec. Doc. 38, pp. 1-11).

On May 11, 2000, following a trial to a jury in the Court of Common Pleas of Susquehanna County, Pennsylvania, Petitioner was convicted on one count of murder in the third degree for the death of his girlfriend.  (Rec. Doc. 31, Ex. 3). On June 22, 2000, the trial court sentenced Homily to a term of imprisonment of ten to twenty years, a $5,000 fine, the costs of prosecution, and restitution to the victim's family for burial expenses.  (Rec. Doc. 31, Exs. 1 and 2).

Petitioner, represented by counsel, appealed the conviction to the Pennsylvania Superior Court.  He raised five issues.  First, he contended that the trial court erred by admitting into evidence hearsay statements by the decedent concerning Homily's abusive behavior.  Second, he contended that the medical evidence – the testimony of a medical examiner who had performed the decedent's autopsy and two other medical experts – was not sufficient as a matter of law to support the charge of homicide.  According to Homily, none of the medical experts could state to a reasonable degree of medical certainty that the cause of death was

2

homicide.[1]  Third, Homily contended that the delay between the decedent's death and the Petitioner's indictment prejudiced Homily's right to a fair trial.  Fourth, Petitioner contended that the trial court erred in sentencing him by deviating from the sentencing guidelines.  Finally, Homily contended that the trial court erred in instructing the jury that it could consider his flight.  (Rec. Doc. 31, Ex. 5).

The Superior Court affirmed the Petitioner's conviction on November 20, 2001.  In denying the Petitioner's second claim, the Superior Court found that the medical examiner "expressed with a reasonable degree of medical certainty that [the decedent's] death was a homicide," which was, consequently, sufficient for the jury to find beyond a reasonable doubt that the death was a homicide.  (Rec. Doc. 31, Ex. 9).

---

[1] The following facts proffered by the relator formed the basis of his claim: The decedent's body was found in 1991.  The medical examiner, aware that the decedent's corpse had been found in suspicious circumstances, determined that the decedent had died of internal hemorrhaging but could not determine the source of the hemorrhage or the cause of death.  The decedent remained unidentified until 1994.  Even with the decedent's medical records, which indicated that she had been a victim of physical abuse, the medical examiner still could not determine a cause of death, but ascertained that the prior physical abuse was unrelated to the death.  In 1994, the Petitioner became a suspect in the death.  The Pennsylvania State Police asked the medical examiner to reclassify the cause of death as a homicide, which he did in 1999 without conducting any further examination.  At trial, the Commonwealth called two pathologists who testified, without examining the corpse, that the cause of death was homicide.  Petitioner argues that the autopsy revealed no basis upon which a medical expert could find the cause of death to be homicide because the source of the hemorrhaging was indeterminate and could be non-homicidally caused.  The Petitioner's medical expert stated that the cause of death could not be determined and could have been caused by a ruptured cyst instead of physical violence.  Furthermore, the medical examiner had at one point testified that the cause of the hemorrhaging could have been the forceful insertion of a dildo into the vagina or rectum.  (Rec. Doc. 31, Ex. 5).

The Petitioner, represented by counsel, then petitioned the Pennsylvania Supreme Court for allowance of appeal, raising four issues.  First, he contended that the trial court abused its discretion by allowing the Commonwealth to use the decedent's hearsay statements as substantive evidence of the Petitioner's guilt instead of to show her state of mind.  Second, Homily contended that the trial court abused its discretion by allowing "voluminous and cumulative" testimony of the decedent's hearsay statements that prejudiced him.  Third, reiterating the arguments presented to the Superior Court, he contended that the medical evidence was not sufficient to support the charge of homicide.  Finally, he contended that the delay between the decedent's death and his indictment prejudiced his right to a fair trial.  (Rec. Doc. 31, Ex. 10).  The Supreme Court denied allocator on May 20, 2002.  (Rec. Doc. 31, Ex. 12).

On July 16, 2002, Petitioner, proceeding *pro se*,[2] petitioned for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541, *et seq*., in the Court of Common Pleas, alleging ineffective assistance of counsel and violations of the United States and Pennsylvania Constitutions.  First, Petitioner contended that the trial court abused its discretion by not allowing the Petitioner's counsel to

---

[2] Petitioner was initially appointed counsel to represent him in this post-conviction petition, however, counsel's motion to withdraw was granted because of the petition's lack of merit.  (Rec. Doc. 31, Exs. 15 and 19).

4

cross-examine a Commonwealth witness concerning the witness's prior

convictions.  Second, Homily contended that counsel were in effective for "failing

to preserve and raise on direct appeal the constructive denial of petitioner's right to

confrontation" with respect to the Commonwealth witness's cross-examination.

(Rec. Doc. 31, Ex. 13).  Third, the Petitioner contended that counsel were

ineffective for failing to call his parents as witnesses.  Finally, Homily contended

that counsel were ineffective for failing to show that the medical evidence was

insufficient to support the charge of homicide and in addition that it was false.  The

Petitioner reiterated the arguments raised in his direct appeal and further posited

that the cause of death could have been an ectopic pregnancy, which had been

raised – and dismissed by the medical examiner – at trial.  Petitioner argued that

his counsel were ineffective because they did not show that the medical examiner's

opinions were unsubstantiated and perjurious because there was no pathology

report and no laboratory tests on blood or tissue to confirm his findings and

exclude an ectopic pregnancy.  Petitioner submitted that had the medical examiner

or the other medical experts provided a pathology report or laboratory tests, the

evidence would then have shown that an ectopic pregnancy was a more likely

cause of death than homicide.[3]   Petitioner also alleged that his counsel put an

unqualified expert on the stand, whose testimony was allegedly detrimental to the

Petitioner's case.  (Rec. Doc. 31, Exs. 13, 17 and 18).

The Court of Common Pleas denied the petition without a hearing on April

17, 2003.  In rejecting Petitioner's final claim, the court made two findings.  First,

the court found that Homily was not entitled to PCRA review on his claim

concerning the medical examiner's testimony because it had been previously

litigated on direct appeal.  Second, the court found that the Petitioner's medical

expert had not prejudiced his case by misdiagnosing the cause of death and was a

qualified medical expert against whom the jury had no reason to be biased.  (Rec.

Doc. 31, Ex. 19).

On May 16, 2003, the Petitioner appealed, *pro se*, the lower court's denial of

his post-conviction petition to the Superior Court.  (Rec. Doc. 31, Ex. 20).  The

Petitioner raised three claims.  First, Homily contended that the Court of Common

Pleas abused its discretion in finding that the issue of counsel's ineffectiveness for

failing to argue that the medical testimony was insufficient had been previously

litigated.  Second, the Petitioner contended that the Court of Common Pleas erred

---

[3] Homily argues that the medical examiner and the other medical experts failed to follow up on physical indications of an ectopic pregnancy, including by not producing a pathology report or conducting laboratory tests.

"by failing to address the claims of trial counsel's ineffectiveness in an evidentiary hearing due to [Petitioner's] use of numerous extra record facts." (Rec. Doc. 31, Ex. 23). The second claim consisted of two allegations: first, that counsel failed to obtain from the Commonwealth a pathology report that would have shown that the decedent had died of an ectopic pregnancy and the medical examiner had perjured himself,[4] and second, that counsel were ineffective for hiring an incompetent expert. As part of the second argument, Petitioner claimed that had his expert been competent, he would have testified that the medical examiner should have conducted laboratory tests to determine whether there was an ectopic pregnancy. In his third claim, Homily contended that the Court of Common Pleas erred in not holding an evidentiary hearing on the Commonwealth's use of false testimony. (Rec. Doc. 31, Ex. 23).

The Superior Court affirmed the denial on October 21, 2004. In rejecting Homily's first claim, the court found it unreviewable even though it was raised as a claim of ineffective assistance of counsel. "[C]laims that are finally litigated cannot be reexamined under the guise of ineffectiveness of counsel." (Rec. Doc. 31, Ex. 23). In rejecting Homily's second claim, the court first found that he had

_____

[4] Petitioner argued that the Commonwealth violated his rights under Brady v. Maryland, 373 U.S. 83 (1963), by not disclosing the exculpatory pathology report.

waived it by not raising it in his PCRA petition.  However, the court then went on to discuss the claim's lack of merit.  The Petitioner had failed to show a <u>Brady</u> violation because it was "mere supposition" that a pathology report existed.  (Rec. Doc. 31, Ex. 23).  There being no actual evidence that there was a pathology report in the hands of the Commonwealth, the Commonwealth could not have then suppressed it in the court's view.  The court, adopting the reasoning of the lower court, next found that the Petitioner's medical expert was qualified.  It refused to address the issue of whether the medical examiner should have performed laboratory tests because it had not been raised in the lower court. (Rec. Doc. 31, Ex. 23).

Homily did not petition for allowance of appeal to the Pennsylvania Supreme Court.  (Rec. Doc. 29).  "No further relief was sought in the State Court where, it appears that no relief is available."  (Rec. Doc. 2).

On July 28, 2005, Petitioner, proceeding *pro se*, filed the instant Petition. He raises three claims.  First, Petitioner contends that the Commonwealth unconstitutionally failed to disclose exculpatory evidence in the form of the decedent's medical records that showed she died of natural causes.  "Instead the prosecution hid the records and prosecuted this petitioner for murder."  (Rec. Doc. 1).  Petitioner alleges that, after trial, he received an anonymous package

8

containing the decedent's medical records, which the Commonwealth never disclosed to the defense and which showed that the decedent had suffered from an ectopic pregnancy and other uterine health problems that could have caused her death.  According to Homily, the Commonwealth based its case on "supposition and/or flat out conjecture" and deliberately withheld exculpatory medical evidence. (Rec. Doc. 2).  Additionally, the Commonwealth left in the possession of the West Virginia State Police, who had found the corpse, various tissue and blood samples and other evidence that would prove the decedent died of an ectopic pregnancy. (Rec. Doc. 2).

Second, Petitioner contends that his trial and appellate counsel were ineffective because they did not "investigate[] the circumstances surrounding the victims death [*sic*]" or "attempt to secure" the victim's medical records, which would have shown that the Commonwealth's medical evidence was false.  (Rec. Doc. 1).  Finally, Homily contends that the Commonwealth knowingly presented false testimony by the medical examiner, who had been coerced to change the decedent's cause of death to homicide even though he had no basis for that conclusion.  Each of these claims relies on the Petitioner's assertion that the Commonwealth suppressed the decedent's medical records and medical evidence. (Rec. Doc. 1).

The Respondents filed a response, brief, and exhibits on February 15, 2006. (Rec. Docs. 28, 29, 31).  Regarding the first claim, the Respondents note that the Superior Court, in denying the Petitioner's PCRA appeal, found that he had not properly presented his <u>Brady</u> claim to the Court of Common Pleas.[5]  The Superior Court, in the same decision, rejected on the merits the Petitioner's second and third claims.  (Rec. Doc. 29).

The Respondents go on to argue that, even though the Superior Court treated the second and third claims on the merits, the Petitioner is really raising a new claim that the Pennsylvania courts have not addressed.  Respondents submit that the Petitioner interweaves throughout the Petition and supplemental filings the argument that he has new medical evidence showing that the cause of death was an ectopic pregnancy and that testing would prove this.  "Petitioner has never formally presented his claim of ineffective assistance of counsel based upon the failure to test the retained autopsy samples."  (Rec. Doc. 29).

Petitioner submitted a reply to the response and exhibits on February 28,

---

[5] The Respondents also argue, in a footnote, that the Commonwealth did not suppress the medical evidence in West Virginia.  They argue that the Petitioner and his counsel had a copy of the West Virginia State Police's report, which listed the tissue and blood samples and other evidence that the state police retained and which the Petitioner contends would prove his innocence.  They further argue that the defense in fact offered into evidence as Homily's own exhibit the police report and cross-examined the state trooper who had prepared the report with it.  (Rec. Doc. 29).

2006, an "Addendum/Exhibit" to the reply on March 3, 2006, a "Compilation of

Medical History Withheld by the Commonwealth" on March 15, 2006, and

"Petitioner's Suggestion of Court and M.D. Consultation to Realize the Efficacy of

the Habeas Petition, the Validity of the Requests to Analyze Certain Items Left in

Bridgeport, WV, as per Proper Protocol, and to Interpret the Medical Records

Hidden by the Commonwealth" on March 24, 2006.  (Rec. Docs. 32, 33, 34, 35).

These submission are a collection of documents by the Petitioner and exhibits that

discuss the issues the Petitioner has raised at all stages of his case in state and

federal court.  They include copies of the decedent's medical records that the

Commonwealth allegedly suppressed.

In addition, the Petitioner filed and there remains pending "Duce

Tecum/Petitioner's Motion to Allow the Issuance of Subpoenas" and "Petitioner's

Motion to Subpoena and Compel the Preservation of Evidence."  (Rec. Docs. 24,

26).

As previously noted, on July 28, 2006, Magistrate Judge Mannion issued a

Report and Recommendation, recommending that the Petition be dismissed with

respect to claim one for failure to exhaust remedies and denied with prejudice on

the merits with respect to claims two and three.  (Rec. Doc. 36 at p. 23).

Magistrate Judge Mannion further recommended that Petitioner's pending Motions

(docs. 24, 26) be dismissed as moot.  Objections to the Magistrate Judge's report have been received and reviewed.  This matter is therefore ripe for our disposition.

## STANDARD OF REVIEW:

When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections.  See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge.  See id.  Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

## DISCUSSION:

### A.    Exhaustion of Remedies

As noted in the report, a district court is authorized to "entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254

(2006).  A petition for writ of habeas corpus is the exclusive federal remedy for a

state prisoner challenging the "very fact or duration" of his confinement and

seeking "immediate release or a speedier release from that imprisonment."  Preiser

v. Rodriguez, 411 U.S. 475, 498-500 (1973).

It is well settled that a district court may grant a petition only if the petitioner

has exhausted all available state remedies as to each federal claim raised in the

petition.  28 U.S.C. § 2254(b)(1)(A); Coleman v. Thompson, 501 U.S. 722, 731-32

(1991); Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  The principle of

exhaustion, which is founded on federal-state comity, requires a petitioner "to give

the state courts a full and fair opportunity to resolve federal constitutional claims

before those claims are presented to the federal courts . . . by invoking one

complete round of the State's established appellate review process."[6]  O'Sullivan v.

Boerckel, 526 U.S. 838, 844-45 (1999); see Slutzker, 393 F.3d at 380 (citing

Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)).  The "complete round" must

include petitioning for any available discretionary appeal to the state's highest

---

[6] To provide the state courts with a full and fair opportunity, the petitioner must "fairly present" his federal claims, which means that "a relator must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

court.[7] O'Sullivan, 526 U.S. at 844-45; see Slutzker, 393 F.3d at 380 (citing

Doctor v. Walters, 96 F.3d at 681).

"State prisoners do not have to invoke extraordinary remedies when those

remedies are alternatives to the standard review process and where the state courts

have not provided relief through those remedies in the past." O'Sullivan, 526 U.S.

at 844 (citing Wilwording v. Swenson, 404 U.S. 249, 249-150 (1971)(per curiam).

Instead, a petitioner must only avail himself of a state's "normal, simple, and

established" review process. Id. at 845 (describing discretionary review to the

Illinois Supreme Court). In Pennsylvania, allocator to the Supreme Court is not

"available" because that court has "remove[d] review of criminal and collateral

appeals from the 'normal' and 'established' appellate review procedure," and state

prisoners need only undertake direct or collateral appeals to the Superior Court.

Lambert v. Blackwell, 387 F.3d 210, 232-234 (3d Cir. 2004), cert. denied, 544

U.S. 1063 (2005)(citing In re Exhaustion of State Remedies in Criminal and Post-

Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May

9, 2000)).

The requirement of exhaustion is excused if it would be futile because "there

---

[7] In a discretionary appeal process, the state's highest court need not adjudicate the claim; rather the petitioner must merely present the claim to it. O'Sullivan, 526 U.S. at 845-47; Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984); Wallace v. Pennsylvania Bd. Of Probation & Parole, No. Civ. 04-1297, slip. op. at *2 (M.D. Pa. Nov. 7, 2005).

is an absence of available State corrective process," such as where an appeal or petition for review would be procedurally barred as untimely, or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(I), (ii); <u>Slutzker</u>, 393 F.3d at 380 (citing <u>Doctor</u>, 96 F.3d at 681).  However, if exhaustion is futile because the petitioner failed to satisfy a state procedural requirement, then the petitioner has procedurally defaulted and the exhaustion requirement is not necessarily excused.  <u>Coleman</u>, 501 U.S. at 729-30; <u>Slutzker</u>, 393 F.3d at 380-81.  The concept of procedural default, like exhaustion, is founded on comity and federalism.  A federal court may not entertain a petition for habeas corpus where the petitioner has procedurally defaulted because the procedural default "rests on independent and adequate state procedural grounds." <u>Coleman</u>, 501 U.S. at 729-30, 750; <u>Slutzker</u>, 393 F.3d at 380-81.

Procedural default may be excused.  If the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," then procedural default is excusable.  <u>Coleman</u>, 501 U.S. at 749-50; <u>Slutzker</u>, 393 F.3d at 380-81.  To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules."  <u>Murray v. Carrier</u>, 477 U.S. 478, 488

15

(1986).  Examples of "cause" include where interference by government officials made compliance impracticable or ineffective assistance of counsel. Id. But a claim of ineffective assistance of counsel must generally be presented to the state courts as an independent claim before it may be used to establish "cause" for procedural default.  Id. at 488-89; Werts v. Vaughn, 228 F.3d 178, 192-193 (3d Cir. 2000); see Edwards v. Carpenter, 529 U.S. 446, 451 (2000)("[A] procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself").

The miscarriage of justice exception is available only in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496 (1986).  To demonstrate actual innocence, a petitioner must make a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986).  This showing requires a petitioner to "show a fair probability that, in light of all the evidence, including that . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of facts would have entertained a reasonable doubt of his guilt."  Id. n. 17 (quoting Henry Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)); see

Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

### **Claim One: Brady Violation**

Petitioner did not raise his first claim,  that the Commonwealth unconstitutionally failed to disclose exculpatory evidence in the form of the decedent's medical records that showed she died of natural causes in violation of Brady, in his direct appeal or PCRA petition.  This claim was first raised in his appeal to the Superior Court of the Court of Common Pleas' denial of his PCRA petition.  The Superior Court refused to entertain the claim, noting that the Petitioner had not presented the Brady claim in the Court of Common Pleas. Upon this basis, Magistrate Judge Mannion concluded that the Petitioner has failed to exhaust claim one in the state courts, inasmuch as the state courts were not provided with a "full and fair opportunity" to consider the merits of the claim. The Petitioner contends otherwise, essentially arguing that the Petitioner somehow constructively raised a Brady violation in his direct appeal or PCRA petition. However, a review of the issues contained in Petitioner's direct appeal and PCRA petition confirms the Magistrate Judge's conclusion.  Petitioner did not raise the alleged Brady violation contained in claim one of the instant Petition in either his direct appeal of PCRA petition.  We shall accordingly adopt this finding by Magistrate Judge Mannion.

After determining that Homily has not exhausted in the state courts his first claim within the instant Petition, the next step of the analysis is a determination of whether exhaustion is futile due to procedural default, and if so, whether the procedural default is excusable.  It is apparent to the Court that the Petitioner can no longer timely submit the issue to the state courts, <u>see</u> 42 Pa. Cons. Stat. § 9545 (2006)(statute of limitations on filing PCRA petition), therefore exhaustion of the claim is necessarily futile and the Petitioner has procedurally defaulted.

Magistrate Judge Mannion found no ground to excuse the Petitioner's procedural default.  Petitioner objects, essentially arguing for an application of the miscarriage of justice exception.

Magistrate Judge Mannion first noted that there was no cause for the Petitioner's failure to timely raise the <u>Brady</u> claim in his direct appeal or PCRA petition, and that neither the government nor allegedly ineffective counsel prevented him from raising the issue at some point.  Regarding the miscarriage of justice exception, Magistrate Judge Mannion explains, and we agree, that although the Petitioner avers that the victim's medical records would prove him "actually innocent," the evidence did not serve to convince Magistrate Judge Mannion that the jury would have "entertained a reasonable doubt of his guilt."  We agree.  As noted by the Magistrate Judge, the record indicates that there was *substantial*

circumstantial evidence presented at trial upon which the jury could reasonably find Homily guilty of the decedent's murder, notwithstanding the allegedly suppressed medical evidence.  To wit: multiple witnesses testified to the Petitioner's marked and lengthy history of  abuse of the decedent and her fear that he would kill her; three medical experts testified that the cause of death was homicide; one witness implicated Homily in the murder; and, one witness implicated Homily as being the last person seen with her.  Homily's own expert, whom the state courts found was qualified and competent, testified that the cause of death could have been natural, not homicide. Furthermore, evidence was introduced that the decedent's body was found wrapped in a tarp bound with rope in a remote location of West Virginia. The jury simply chose to credit the Commonwealth's witnesses and evidence over the Petitioner's, and it was not unreasonable for it to do so.

The allegedly suppressed medical records do not conclusively show that the decedent died of an ectopic pregnancy, but rather indicate that she had pre-existing medical problems, and in particular that they were uterine in nature.  Notably the records indicated that the decedent had a retroverted uterus and had undergone a routine dilatation and curretage procedure in 1989.  However, it is important to note that a period of two years elapsed between the D&C and the decedent's death,

therefore making any link between the two events tenuous at best. Petitioner has simply made no showing that had the jury known about the decedent's medical history that it would have assigned more weight to the Petitioner's expert's testimony or would have adopted his theory of the case.[8]

Petitioner has made no showing that the contents of these records would have altered the conclusion of the jury that the decedent was murdered by the Petitioner, rather than that she died of natural causes.  Petitioner's medical expert testified that it was *possible* that the decedent died of natural causes – if the expert had the records before he testified, his conclusion would have likely been the same. That testimony would have served to raise the same doubt that the Petitioner's medical expert attempted to raise without success, and we agree with Magistrate Judge Mannion's conclusion that the jury would no more have credited the allegedly suppressed medical records than it credited the expert.  Accordingly, we find that the Petitioner's procedural default is not excusable on any basis, and therefore we shall dismiss claim one of the Petition.

**Claims Two and Three**

---

[8] As previously discussed in this Memorandum, it is abundantly apparent to the Court that there was nothing short of a crushing amount circumstantial evidence introduced against Homily at trial.  Petitioner simply attempts to assign the medical records a value of substantially greater importance and relevance than they deserve when compared with the field of evidence amassed against him.

We also agree with Magistrate Judge Mannion's finding that Homily has properly exhausted claims two and claim three of the Petition.  Both claims are substantially similar to claims that were presented to the state courts in the relator's direct appeal and PCRA petition.  In those instances, the Petitioner challenged the sufficiency of the evidence to support a charge of homicide and argued that the autopsy and the decedent's medical history would have indicated a natural cause of death had they been properly reviewed.  The Petitioner's second claim essentially argues that his counsel failed to show that the medical evidence indicated a non-homicidal cause of death, which would have led the jury to acquit him, and which in his view means counsel were ineffective.  With respect to his third claim, although the Petitioner presents it in the formal Petition as a matter of the Commonwealth presenting perjured testimony, the actual basis of the claim as shown by his submissions is really that the medical evidence was insufficient to support a guilty verdict.  With respect to both claims, Petitioner exhausted his remedies because he appealed the Court of Common Pleas' denial of both claims to the Superior Court.  Accordingly, we shall address the merits of the second and third claims.[9]

---

[9] Even assuming *arguendo* that the Petitioner had not exhausted his remedies, we may deny the claims on the merits.  See 28 U.S.C. § 2254(b)(2).

21

**B.**     **Merits Analysis**

**Habeas Corpus Standard of Review**

In evaluating the merits of a state prisoner's habeas petition, the district court must generally defer to the decisions of the state courts.  A district court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A decision by a state court is "contrary to . . . clearly established federal law" if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 887-88 (3d Cir.)(en banc), cert. denied, 528 U.S. 824 (1999).  A decision by a state court unreasonably applies federal law if "the state court identifies the correct governing legal principle from th[e Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413.

The application of §2254(d)(1) involves two steps.  First, the court must determine whether "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court."  Matteo, 171 F.3d at 888 (quoting O'Brien v. Dubois, 145 F.3d 16, 24-25 (1st Cir. 1998), overruled in part on other grounds by McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002)).  Then, if the court determines that the state court's decision was not contrary to" federal law, "either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established," the court must determine whether the state court's application of federal law was an "unreasonable application" of the Supreme Court rule.  Id. at 889.  Unreasonableness is an objective determination; a state court decision is unreasonable if, "evaluated objectively and on the merits, [it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  Id. at 889-90; see Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

### Claim Two: Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of counsel, which is measured by "reasonableness under prevailing professional norms."  Strickland v. Washington, 466 U.S. 668, 687 (1984); U.S. Const. amend. VI.  To establish a violation of that

right, a petitioner must make two showings.  First, he "must show that counsel's

performance was deficient."  Id.  Second, he must affirmatively show that the

deficient performance "prejudiced the defense."  Id. at 687, 693.  Prejudice means

that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  Id. at 694.

Pennsylvania's standard for ineffective assistance of counsel in adjudicating

a PCRA petition is similar to the standard announced in Strickland.  Pursuant to 42

Pa. Cons. Stat. § 9543(a)(2)(ii), a defendant petitioning under the PCRA in state

court must show that ineffective assistance of counsel "so undermined the truth-

determining process that no reliable adjudication of guilt or innocence could have

taken place."  To meet the required showing, a defendant must prove that (1) the

issue giving rise to the ineffectiveness claim has arguable merit; (2) counsel had no

reasonable basis for the challenged conduct; and, (3) the challenged conduct

prejudiced the defendant.  Werts, 228 F.3d at 20; Commonwealth v. Pierce, 527

A.2d 973, 975-76 (Pa. 1987).  The Pennsylvania standard, which was applied by

the state courts in the Petitioner's PCRA petition and appeal, is not "contrary to"

the standard announced in Strickland.  See Werts, 228 F.3d at 204 (Pennsylvania's

standard not "contrary to" federal standard); Pierce, 527 A.2d at 976-77 (same).

Magistrate Judge Mannion found that the state courts did not unreasonably

apply the ineffective assistance standard in evaluating Homily's claims.  Both the

Court of Common Pleas and the Superior Court found that Homily's counsel

undertook an adequate and reasonable defense.  Our review of the record confirms

those same conclusions.  Defense counsel presented an expert, whom the state

courts found to be competent and qualified, who testified that the decedent's cause

of death could have been natural.  Petitioner argues that defense counsel was

deficient in failing to obtain the decedent's medical history.  Regardless of whether

the failure to obtain the records was deficient, for the reasons aforestated and as

detailed by Magistrate Judge Mannion, we cannot find that the expert's testimony,

combined with the medical records, would have altered the jury's determination,

thereby resulting in a different conclusion.  Furthermore, counsel did raise the

issue of whether the decedent's health and autopsy indicated a non-homicidal

cause of death.  The jury chose, as is its province, to discredit the Petitioner's

theory of the case.  We cannot find, based upon the record before us, that counsel's

performance was deficient.  Furthermore, even assuming *arguendo* that counsel

was deficient for failing to obtain the subject medical records, as we have

previously discussed in this Memorandum, there exists significant and separate

circumstantial evidence to support the jury's determination of the Petitioner's guilt.

Accordingly, Petitioner simply cannot show that he was prejudiced, even if the

Court were to find counsel's performance deficient, which, as noted, we do not.

Accordingly, we shall adopt Magistrate Judge Mannion's recommendation to deny, with prejudice, claim two of Homily's Petition.

### Claim Three: Sufficiency of the Evidence

The Constitution guarantees a criminal defendant the right to be convicted only on evidence sufficient to establish to a finder of fact, beyond a reasonable doubt, every element of the crime.  U.S. Const. amend. XIV; see Jackson v. Virginia, 443 U.S. 307, 324 (1979).  In determining whether the evidence is sufficient to sustain a conviction, a federal court must view all the evidence and draw all inferences in favor of the prosecution.  Jackson, 443 U.S. at 319.  The evidence may only be found insufficient "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.

Pennsylvania's standard for determining the sufficiency of the evidence in a direct appeal is similar to the federal standard.  The appellate court, viewing the evidence and drawing all inferences in favor of the Commonwealth, must determine whether the trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt.  Commonwealth v. Hagen, 654 A.2d 541, 543 (Pa. 1995).  This standard, which was applied by the Superior Court in the

26

Petitioner's direct appeal, is clearly not contrary to the federal standard.

Magistrate Judge Mannion concluded that the Superior Court's application of the sufficiency of the evidence standard was not unreasonable, noting that the Superior Court found that the medical examiner had expressed his opinion that the decedent's death was a homicide in accordance with the relevant standard of a reasonable degree of medical certainty.  Magistrate Judge Mannion found the Superior Court's determination that the medical examiner's expert opinion was sufficient for the jury to conclude that the death was a homicide to be objectively reasonable.

Petitioner objects, arguing that Magistrate Judge Mannion's finding that sufficient evidence existed to support Homily's homicide conviction is based only on the bare testimony of the medical examiner.  Petitioner argues that Magistrate Judge Mannion erred by only relying upon the Pennsylvania Superior Court's finding that the medical examiner's opinion was sufficient for the jury to conclude that the death was a homicide.

While Magistrate Judge Mannion may have only cited to the Superior Court's interpretation of the medical examiner's testimony to support his recommendation that the third claim of the Petition be denied, we do not find this to be in error.  Viewing the factual record as a whole, as we have done in this

Memorandum, again we note that apart from the medical examiner's testimony, there existed several areas of circumstantial evidence that we find were sufficient to support the jury's finding of guilt beyond a reasonable doubt.  To reiterate and summarize, evidence was presented that the decedent believed Homily would kill her, there was a history of domestic violence between them, one witness implicated Homily in the murder and another witness testified that Homily was the last person seen with her when she was alive.  The fact that Magistrate Judge Mannion highlighted a portion of the Superior Court's application of the sufficiency of the evidence standard is not error, and we shall adopt the Magistrate Judge's recommendation on this point.  Accordingly, claim three shall be denied with prejudice.

**<u>CONCLUSION</u>**:

Our review of this matter confirms Magistrate Judge Mannion's well-reasoned and logical conclusions.  We shall overrule the Petitioner's objections in their entirety, and adopt the Magistrate Judge's report.  An appropriate Order shall issue.